# DECISIONS

OF

# THE COURT OF APPEALS

## OF KENTUCKY.

## SUMMER TERM, 1856.

### Talbott's Heirs *vs.* Talbott's Heirs.

Case 1.

#### APPEAL FROM BOURBON CIRCUIT.

PET. EQ.

| 17bm 1 |
| 0116 870 |
| 17bm 1 |
| 0116 870 |

1. Where an infant dies possessed of real estate devised to him by the father, having brothers and sisters of the whole and of the half blood, those of the half blood take only half shares with those of the whole blood, according to the *9th sec. Rev. Stat., p.* 280, *and sec. 3d of the same statute.*
2. The brothers and sisters of an infant take from the infant, as collaterals, where they inherit real estate from the infant. (*Sec. 3d of Statute of Descents.*)

[The facts of the case are set out in the opinion of the Court.—REP.]

*G. W. Williams* for appellants—

The principal question in the case is this: Do the parties, all of whom inherit the land, take according to their blood, or do they take in equal shares alike?

The 9th section of the law of descents, page 280, contains the rules by which the question is to be decided. That section, like the one which precedes it, the 8th, gives a different direction to descents than

that which is given by the statute in its primary and leading feature, which is, there being no children, and their descendants to inherit, the estate shall pass to the father first, and if none, then to the mother, brothers and sisters, and their descendants, and this irrespective of the source whence the same was derived; so that, as in the 8th section, which provides for the case of an *adult* dying without issue, there is supreme respect had to that source, and the whole inheritance is cast upon the parent, if living, from whom it came; while by the 9th section, which provides for the case of an *infant* dying without issue, a like respect is had to it, with a further limitation, that if the parent be not alive from whom the estate came, the estate passes to his or her kindred, if any; and, moreover, the rules as expressed in this section, "as herein before directed," shall govern the descent.

To whom, then, does the land of the infant, John Talbott, deceased, descend? He got it by devise from his father, Samuel Talbott, deceased. It cannot descend to him, because he is not alive. It must pass to his kindred, "if any." The appellant and appellees are his sons and daughters, and it descends to them. But from whom? Not from him, because he had devised it to his son, John Talbott, and although he was the first acquirer of the estate, it does not and cannot descend from him, but does descend from his devisee, John Talbott, who died seized and possessed of it, and who only can be the true proprietor. His kindred take, however, in subordination to the rules of the statute, contained in provisions preceding section 9th, one of which is contained in section 3d, which provides that "collaterals of the half blood shall inherit only half as much as those of the whole blood," and hence it follows that the brothers and sisters of John Talbott, the deceased infant, from whom the estate descends, must receive whole shares, while those of the half blood can receive only half shares.

The legislature intended by the 8th and 9th sections to change the main features of the rule of descents, which rule has no respect whatever to the blood of the person who was the first acquirer, or first purchaser, of the estate cast, and in this change so to direct the descent, as in the 8th section, that the estate should go to the parent from whom it came, and in the 9th section, to that parent and his or her kindred, if any ; and in both sections a due regard is had to the relation those have by blood upon whom the estate is cast, to the person from whom it descends ; and hence the rule as to collaterals of the whole and half blood stands upon the same footing whereon it stands in the general provisions of the law.

By the 11th section, the personal estate of an infant shall be distributed as if he had died of full age, and to such persons as are entitled to his real estate by descent. This section operates, therefore, to place the personal estate of an infant dying without issue, in the same channel in which the 8th section places the real estate of an adult dying without issue ; that is, the estate passes to the parent from whom it came, if living, but if dead, it takes the course provided for by the first enactments of the statute ; and herein the provisions of the law are in harmony with each other, except in this, that more importance is attached to blood in reference to real than to personal estate, otherwise there would be no necessity for exception "first" of 11th section.

The virtue of blood flowing from the first purchaser of an estate, not as a proprietor, but as a first acquirer, in its influence upon the course of descents under our statute is made more apparent by a fact in this very case, but which does not appear in the pleadings. The infant, John Talbott, was also the owner of real estate derived from his mother, who is also dead. By the 9th section that estate is cast upon her kindred, who are the appellants in this cause—not upon her, for she is dead. The appellees,

because they have none of her blood in their veins, are excluded. For them to have inherited any of this estate they must have been of her blood. In the case in controversy they are not only of the blood of Samuel Talbott, the first purchaser, but also of John Talbott, the proprietor, these two being essentials, and therefore they are entitled to the inheritance, but they take only in the proportions they bear as to blood to the proprietor, John Talbott, from whom they inherit.

There is another question to which the attention of the court is now called.

The petition was filed in the county court, and by that court an order for division and appointment of commissioners was made. An appeal was taken to the circuit court by the appellees in this court. Upon that appeal the circuit court gave its judgment. The case being one of appeal, the decision of the circuit court should have affirmed or reversed the judgment of the county court, and remanded the case back with instructions to the county court in conformity with the opinion of the circuit court.— But this was not done. The circuit court adjudicated upon the case as if it had obtained original jurisdiction, as provided by *section* 549 *of the Code of Practice*, which says that "the case, on motion of either party, shall be moved into the circuit court for trial." Had either party, during the pendency of the case before the county court, moved to transfer it to the circuit court for trial, then that court would have had original jurisdiction, as it were, and its judgment should have been for a division of the land, the appointment of commissioners to make the division, and for a conveyance to the parties in severalty, when the division was made; in truth, it would have had entire control of the case up to its final disposition. The circuit court has jurisdiction of cases for the division of land in two ways: 1. By appeal from the county court. (*Section* 20.) 2. As above suggested, by motion made to the county court before

trial, by either party, for a removal of the case to the circuit court "for trial." And, whenever the circuit court obtains jurisdiction in either of these ways, the the judgment must be in conformity to that way—if by appeal, the case must be remanded to the county court with instructions; and if by motion, it must be determined as if the case had originated in the circuit court. In the present case, the circuit court acted as if it had obtained jurisdiction, not by appeal, but upon motion, before trial, in the county court, and hence it follows that it erred in not remanding the case to the county court with instructions. Its order should have been a reversal of the judgment of the county court, and that court should have been directed to make the division in accordance with the principles laid down by the circuit court.

This is one of the cases in which an appeal is granted from the county to the circuit court, and it may be contended, therefore, that this court has no jurisdiction. But in the case of *Dougherty vs. The Commonwealth*, 14 *B. Monroe*, 239, the court held that it had jurisdiction in a similar case to this. The 16*th section of the Code of Practice* limits appeals to this court from orders of the county court, where an appeal is given to the circuit court from the county court. The *Revised Statutes, art.* 1, *chap.* 27, gives the right of appeal to this court from the circuit court, and the 16*th section of the Code of Practice* does not take away that jurisdiction.

*Robinson & Smith* for appellees—

The question is, shall the appellees have whole or half shares?

According to the 9th section of the chapter of descents, page 280, this land, at the death of John Talbott, descended to *Samuel Talbott and his kindred.* It did not descend to the kindred of the infant, because—

1. The grammatical construction of the sentence forbids it. The word kindred is used four times in

that section, and certainly the three last times refers to the parent, not the infant; and if so, the first must have a like reference.

2. The object of the 9th section is to make the descent of infants' real estate variant from that of adults, as is shown by the section, and by the first clause of the 11th section. But if it is to descend to the kindred of the infant, if the parent be dead, the law is precisely the same as in case of adults, and the ninth section is a nullity.

3. But this construction violates a fundamental rule of construction, that all writings are to be so construed as to give full effect to all its parts, if practicable.

The word kindred is used in the sense of heirs, and is a word of purchase, not limitation. This land is to descend to Samuel Talbott and his kindred, as before directed in that statute. Samuel Talbott is first entitled—the children, and their descendants, of Samuel Talbott, form the second class. As Samuel Talbott is dead, under the 2d section his descendants take by representation the share of their said parent, just as is provided in the ninth clause of the 1st section, under a different, though analagous, state of case—"if the husband or wife is dead, the estate goes to his or her kindred, as if he or she had survived the intestate, and died entitled to the estate." This last provision embodies a principle fully recognised in law. (See *Revised Statutes*, *p.* 696, *sec.* 18–19.)

The simple design of the 9th section seems to be to restore the lands of infants to the parent as the proprietor from whom it came, and there leave it to pass as his or her estate, divested of all taint, bias or character from its previous ownership, to the blood relations of such parent. It is the blood of the parent only that entitles—the blood of the other parent has no inheritable quality whatever. The construction contended for would give to the blood of the last wife an inheritable quality equal to that

of the father, whilst in the distribution of the land of the same infant from the mother, the blood of the father would partake of no such quality.

TALBOTT's H's
*vs.*
TALBOTT's H's.

It is a fact illustrative of the principle contended for, that this infant was also possessed of land by descent from his mother. It is contended by the appellants, and not controverted by the appellees, (there yet having been no controversy about it,) that to any part of this land, the appellees, the first children of Samuel Talbott, are not entitled. It cannot be possible that the same section, in the use of the same language, can be made to work out results so different.

As the appellees are the lineal kindred of Samuel Talbott, the 3d section has no application. To make them collaterals, you must start from the infant, and give to them as his kindred, as formerly done under the old statute, and in doing so his mother, and any child of hers by a prior or subsequent marriage, partaking of the blood of the infant, would necessarily come in.

The words "if there is any," in the fourth line of section 9, is not restricted so as to mean if there be any parent, but means if there is any parent, or kindred of the parent.

Judge STITES delivered the opinion of the court:                    June 6.

John Talbott, an infant, died without issue, seized and possessed of a tract of one hundred and seventy acres of land, derived by devise from his father, Samuel Talbott, also deceased. Samuel, the father, had been twice married, and at his death left children by both wives. John Talbott, the deceased infant, and the appellants, were children of one wife, and the appellees children of the other. In a proceeding, by appeal from the county to the circuit court, had for a partition of the real estate of the deceased infant, it was held by the circuit judge that the appellees, under the statute, took equally with the appellants, and a partition was ordered in conformity with that opin-

TALBOTT'S H's
vs.
TALBOTT'S H's.

ion. From that order this appeal is taken, and the correctness of that decision is the main question for our consideration.

The 9th section of the chapter of the law of descents, (*Revised Statutes*, 280,) contains the rule that must control the question. It provides: "If an infant dies without issue, having title to real estate derived by gift, devise, or descent, from one of his parents, the whole shall descend to that parent *and his or her kindred*, as hereinbefore directed, if there is any; and if none, then in like manner to the other parent *and his or her kindred;* but the kindred of the one shall not be so excluded by the kindred of the other parent, if the latter is more remote than the grand-father, grand-mother, uncles and aunts of the intestate, and their descendants."

This section, and the 8th, immediately preceding, in the cases named in each, vary the general course of descents prescribed in the previous sections of the same chapter. The 8th, applicable to adults dying without issue and intestate, having real estate of inheritance, the gift of either parent, makes the whole of such estate descend to such parent if living. Beyond this restriction and contingency, the estate, in such cases, goes according to the previous general rules. The 9th applies alone to infants dying without issue, possessed of inheritable real estate acquired from one of the parents. It imposes an additional restriction or limitation upon such estate, confining the descent, not only to the parent from whom it came, but also to the kindred of such parent, if any, excluding the kindred of the other parent, provided the kindred of the parent from whom the estate descended, or was derived, should not be more remote than the degrees named in the concluding clause of the section.

Here the father, from whom the estate was derived, was not living at the death of the infant, and the question arises, whether the brothers and sisters of the infant, of the whole and the half blood, of the

1. Where an infant dies possessed of real estate devised to

same father, shall take as lineal descendants of the father, as though directly from him, or as collaterals of the infant, deriving their right through a common ancestor.

Upon the one side, it is insisted that the object of the section in question was to place the estate, for purposes of descent, in the position it would have occupied had the death of the infant occurred prior to that of the father, and to make it descend lineally. On the other, it is contended that the section was not designed to alter the character of the descendants, making collaterals lineals, but, that the language, "to that parent and his or her kindred," merely imports a restriction of the descent to the kindred of that parent to the exclusion of the kindred of the other, as qualified in the section.

We are of opinion that the latter view is correct, and that the purpose of the legislature, as expressed by the 9th section, was not in anywise to alter or affect the well settled rules as to collateral and lineal descendants, but simply to limit the descent of the real estate of an infant dying without issue, to that side of the house from which it came. Not only to the father, if living, as provided in the 8th section, but likewise to the kindred of the father.

In the absence of the father, who first takes, his children take, not from the father, but directly from the infant. They do not take as lineals, but through a common ancestor, as collaterals on the father's side—and some being of the whole, and some of the half blood, and the estate then descending as the section prescribes, "in the manner therein before directed, it falls under the operation of the 3d section, which provides "that collaterals of the half blood shall inherit only half as much as those of the whole blood, or as ascending kindred when they take with either."

It results from the foregoing conclusion, that the appellees, or those who were half-brothers and sisters on the father's side, of the deceased infant, be-

---

*Margin notes:*

TALBOTT's H's
*vs.*
TALBOTT's H's.

him by the father, having brothers and sisters of the whole, and of the half blood, those of the half blood take only half shares with those of the whole blood, according to the *9th sec. Revised Stat., p.* 280, and *sec. 3d of the same statute.*

2. The brothers and sisters of an infant take from the infant as collaterals, where they inherit real estate from the infant. (*Sec. 3 of statute of Descents.*)

ing collaterals of the half blood, are only entitled to one-half as much as those of the whole blood, and the judgment complained of being in conflict therewith, is deemed erroneous.

Wherefore, the judgment of the circuit court is reversed and cause remanded, with directions to affirm the judgment rendered by the county court upon the original petition.